399 F.Supp.2d 356 (2005)
In re: METHYL TERTIARY BUTYL ETHER ("MTBE") PRODUCTS LIABILITY LITIGATION
This document relates to: Edith Quick, et al.
v.
Shell Oil Company, et al., 05 Civ. 7269
Nos. 1:00-1898. MDL 1358(SAS). M 21-88.
United States District Court, S.D. New York.
October 6, 2005.
*357 *358 Duane C. Miller, Michael D. Axline, Miller, Axline & Sawyer, Sacramento, CA, Joseph R. Yurgine, Law Office of Joseph R. Yurgine, Kankakee, IL, John B. Cashion, Law Office of John Bernard Cashion, Chicago, IL, for Plaintiffs.
Christopher Bohlen, Barmann, Bohlen & Woodruff, PC, Kankakee, IL, John E. Galvin, Michael P. Downey, Richard B. Korn, Fox Galvin, LLC, St. Louis, MO, Anthony F. King, John W. Kampman, Michael L. Williams, Wallace King Domike & Branson, PLLC, Washington, D.C., for Defendants Shell Oil Company, Shell Pipe Line Corporation, Equilon Pipeline Company LLC, Parsons Engineering Science, Inc., Richard M. Frendt and Sasa Jazic.
Larry J. Chilton, Chilton, Yambert, Porter & Young, Chicago, IL, Lawrence P. Riff, Steptoe & Johnson LLP, Los Angeles, CA, for Defendants Parsons Engineering Science, Inc., Richard M. Frendt and Sasa Jazic.
Robin Greenwald, Robert Gordon, C. Sanders McNew, Weitz & Luxenberg, P.C., New York, NY, for Plaintiffs.
Peter John Sacripanti, James A. Pardo, Stephen J. Riccardulli, McDermott, Will & Emery LLP, New York, NY, for Defendants.

OPINION AND ORDER
SCHEINDLIN, District Judge.
I. INTRODUCTION
On August 3, 2005, United States Magistrate Judge David G. Bernthal filed a Report *359 recommending that plaintiffs' motion to remand be denied.[1] Plaintiffs object to three of Judge Bernthal's determinations: first, that Shell Oil Company's ("Shell Oil") Notice of Removal was timely; second, that Shell Oil acted under federal direction, had a colorable federal defense, and had shown a sufficient causal nexus between the conduct directed by the federal agency and the harm about which plaintiffs complain; and, third, that "from approximately January 1995 to June 1995, Defendant transported gasoline containing MTBE through the North Line Pipe Line in Limestone Township, Kankakee, Illinois" and that "Defendant apparently did not use MTBE in its North Line gasoline until 1995."[2]
II. STANDARD OF REVIEW
Rule 72(b) of the Federal Rules of Civil Procedure permits a party to object to the recommendations of a Magistrate Judge. The District Judge is then required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which" timely objections are made.[3]
III. BACKGROUND
This case is one of dozens in a multi-district litigation ("MDL"), in which numerous plaintiffs are seeking relief from contamination, or threatened contamination, of groundwater from various defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE").[4] This opinion relates only to Edith Quick, et al. v. Shell Oil Company, et al., 05 Civ. 7269.
This case began in December 2001, when plaintiffs sued Shell Oil, Shell Pipe Line Corporation ("Shell Pipe Line"), Equilon Pipeline Company, LLC ("Equilon"), and Parsons Engineering Science, Inc., Richard M. Frendt, and Sasa Jazic (collectively "Parsons defendants") for nuisance and negligence arising out of a spill from the North Line Pipe Line ("Pipe Line"), allegedly controlled by Shell Oil, which contaminated the groundwater supply with MTBE and other additives.[5] Plaintiffs filed a First Amended Complaint *360 and a Second Amended Complaint with essentially the same allegations.[6] These Complaints alleged that in 1988 an estimated 16,000 gallons of gasoline were released from the Pipe Line in Limestone Township, west of the City of Kankakee, in Kankakee County, Illinois.[7] Plaintiffs also alleged that gasoline continued to be found in the groundwater during the 1990s, either due to a subsurface spill at another location or because leakage from the original spill "was never permanently sealed off."[8] Plaintiffs alleged that Shell Oil transported MTBE-containing gasoline in the Pipe Line[9] and that it "maintained and controlled a continuing source of contamination into the waters of the State of Illinois."[10]
On March 11, 2005, plaintiffs obtained leave to file a Third Amended Complaint in order to add a products liability claim against Shell Oil, Shell Pipe Line, and Equilon.[11] In allegations added to the Third Amended Complaint, Plaintiffs stated that Shell Oil promoted the use of MTBE despite knowledge of the dangers it posed to the public health, and that MTBE pollution was inevitable unless proper precautions were taken.[12] Shell Oil breached its duty to test MTBE in order to determine whether it was environmentally safe and whether it posed significant risks to human health before selling MTBE-containing gasoline.[13] In addition, before adding MTBE to gasoline and selling it, Shell Oil should have taken special precautions, due to the fact that MTBE released into the environment would "mix easily with groundwater, move great distances, resist biodegradation and/or bioremediation, render drinking water unsafe and . . . threaten the public health and welfare."[14] Instead, according to plaintiffs, Shell Oil claimed that gasoline containing. MTBE could be handled in the same manner as gasoline without MTBE, despite its knowledge that MTBE was a defective product and that the benefits of its use were outweighed by the costs imposed on society and the environment.[15]
Two days after the Third Amended Complaint was filed, Shell Oil filed a notice removing the case to federal court, asserting jurisdiction pursuant to both federal officer and federal question jurisdiction.[16] Shell Oil claimed that by adding the strict product liability claim, plaintiffs transformed their lawsuit into one that constituted an "attack on the comprehensive federal system that regulates the content of gasoline and that expressly authorizes and effectively requires the conduct that plaintiff *361 seek to prohibit."[17] Shell Oil further claimed that plaintiffs asserted for the first time in the Third Amended Complaint that Shell Oil was liable not only for negligently operating its pipeline when it released MTBE-containing gasoline, but also for the "design, manufacture, and formulation" of MTBE-containing gasoline.[18]
Shell Oil asserted that the Third Amended Complaint encompassed a time period when gasoline transported by Shell Oil "contained MTBE pursuant to a federal mandate embodied in the Reformulated Gasoline Program (`RGP') of the Clean Air Act."[19] Shell Oil claimed that this Third Amended Complaint was the first paper from which it could be ascertained that the action was removable pursuant to the procedural requirements of 28 U.S.C. § 1446(b).[20] Plaintiffs moved to remand, claiming that Shell Oil's Notice of Removal was untimely and that it had not established that removal was appropriate pursuant to section 1442(a).[21]
In his R & R, Judge Bernthal concluded that Shell Oil had "sufficiently established that it acted under federal agency direction when it added MTBE to its gasoline as alleged in Plaintiffs' strict liability claim."[22] The Judge further noted that plaintiffs' claims for public nuisance, strict liability for defective product, and negligence in the Third Amended Complaint, based on Shell Oil's decision to use MTBE-containing gasoline,[23] were similar to the claims addressed by this Court in MTBE III.[24] Finally, Judge Bernthal found that Shell Oil's only basis for removing the case was federal officer jurisdiction[25] and that removal was timely because Shell Oil had no notice of a claim that it acted at the direction of a federal officer until plaintiffs added the strict liability claim to the Third Amended Complaint.[26]
On August 11, 2005, the Judicial Panel on Multidistrict Litigation transferred this case to this Court for inclusion in In re Methyl Tertiary Butyl Ether ("MTBE') Products Liability Litigation, pursuant to Rule 7.4 of the Rules of the Judicial Panel on Multidistrict Litigation and 28 U.S.C. § 1407.
*362 IV. APPLICABLE LAW
A. Removal and Remand
Section 1447(c) of Title 28 provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." When a party challenges the removal of an action from state court, the burden falls on the removing party "to establish its right to a federal forum by `competent proof.'"[27] "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."[28] If the removing party cannot establish its right to removal by competent proof, the removal is improper, and the district court must remand the case to the court in which it was filed.[29]
A defendant may remove a civil action filed in state court to federal court if the claims arise under federal law.[30] A case arises under federal law when federal law provides for the cause of action,[31] or, as recently explained by the United States Supreme Court, where the state-law claim necessarily raises a "stated federal issue" that is substantial and disputed, "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."[32] In determining if this federal claim exists, courts will "examine the `well-pleaded' allegations of the complaint and ignore potential defenses."[33] The presence of a federal defense does not raise a federal question, "even if the defense is anticipated in the plaintiff's complaint, and even if ... the federal defense is the only question truly at issue."[34]
"A case is removable when the initial pleading enables the defendant to `intelligently ascertain' removability from the face of such pleading."[35] This standard *363 "does not require a defendant to look beyond the initial pleading for facts giving rise to removability."[36] Nor does it require a defendant to "guess" whether the action is removable.[37]
A court must thus consider the complaint at the time of removal to determine if removal was appropriate in the first place.[38] If the basis for federal subject matter jurisdiction later falls away, "[t]he modern rule . . . is that a federal court [has] the power to hear claims that would not be independently removable even after the basis for removal jurisdiction is dropped from the proceedings.[39] There is "a judicial reluctance to make jurisdiction hinge on fortuities or ex parte tactical moves."[40]
B. Federal Agent Jurisdiction
The federal officer removal statute can override the well-pleaded complaint rule.[41] "Suits against federal officers may be removed despite the nonfederal cast of the complaint," but the federal officer's defense must raise an issue of federal law.[42] Thus, persons acting under color of any federal office or agency may remove a case to federal court, despite the absence of a federal cause of action, when their removal petition alleges a colorable federal defense and there is a causal nexus between the federal direction and the conduct at issue.[43]
*364 C. Procedural Requirements for Removal
In addition to demonstrating the presence of federal jurisdiction, a defendant must comply with the removal procedures in section 1446 of Title 28. Specifically, section 1446(b) requires a defendant to file a notice of removal thirty days after receiving the initial pleading.[44]
The thirty-day period is strictly construed.[45] It is "triggered by formal service" of the summons and complaint.[46] However, section 1446(b) also states:
If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.[47]
When a case is removable, but the grounds in the initial complaint are "obscured, omitted, or misstated," a defendant "has thirty days from the revelation of grounds for removal to file a notice of removal."[48] The purpose of the thirty-day rule is:
"to deprive the defendant of the undeserved tactical advantage that [it] would have if [it] could wait and see how [it] was faring in state court before deciding whether to remove . . . ; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings . . . in the first court."[49]
Conversely, the second sentence of section 1446(b) preserves the defendant's right to remove a case to federal court upon receiving notice that the case is removable.[50]
*365 In order to satisfy section 1446(b), a defendant must show (1) that the original complaint was not removable on its face at the time it was filed[51] and (2) that another paper changed the status of the case, making it clear that the complaint was removable.[52] But, where federal officer jurisdiction is claimed, it is not necessary for jurisdictional facts to appear "on [the] surface of the complaint;" the removal petition may supply the jurisdictional basis for removal in the notice itself, if the complaint does not.[53] Nonetheless, because section 1446(b) requires that a defendant have notice of removability[54] the trigger for removal occurs when the initial pleading or other paper contains unequivocal facts that alert the defendant to a claim of federal officer jurisdiction.[55] Further, "since removal statutes are construed in favor of remand, it [is] not unreasonable for defendants to refrain from filing a removal notice upon receipt of . . . an ambiguous complaint."[56] Even a defendant who engages in extensive litigation in the state court cannot be barred from the right to remove in the absence of adequate notice.[57] Finally, "the `amended pleading, *366 motion, order or other paper' must emanate from either the voluntary act of the plaintiff in the state court, or other acts or events not the product of the removing defendant's activity."[58]
V. DISCUSSION
A. Shell Oil's Notice of Removal Was Timely
In their first objection, plaintiffs claim that because the Second Amended Complaint contained allegations that Shell Oil's MTBE-containing gasoline harmed plaintiffs, Shell Oil's Notice of Removal should have been filed within thirty days of that Complaint. Specifically, Plaintiffs point to four paragraphs in the Second Amended Complaint which refer to (1) the fact that Shell Oil manufactured gasoline containing MTBE, (2) that "MTBE . . . can enter the human body . . . through inhalations of vapors," it can be absorbed by contact with skin, and it can be consumed in liquid, (3) that "MTBE . . . released into the ground, the potable water supply, and groundwater" is a contaminant within the definition of section 3.06 of the Illinois Environmental Protection Act, and (4) that MTBE had contaminated the potable water supply in a three-mile radius from the Pipe Line leak.[59] With the exception of the first allegation, each of these allegations was contained in every Complaint prior to the Third Amended Complaint.[60] If these allegations were sufficient to give Shell Oil notice of the action's removability, the case was removable in 2001.
However, plaintiffs' original Complaints alleged only that Shell Oil's Pipe Line had leaked and contaminated the potable water and groundwater supply covering a particular tract of land. In contrast, the Third Amended Complaint claimed that Shell Oil was strictly liable for its decision to use MTBE, a defective product, and for not providing adequate warnings of the risks posed by MTBE or conducting adequate studies of its environmental qualities.[61] The federal officer defense may be raised only where a defendant's decision to use MTBE is challenged. The allegations in the Third Amended Complaint gave Shell Oil unequivocal notice that the federal officer defense was available to it. By contrast, the bare allegation in the first three Complaints that MTBE contaminated plaintiffs' property because of Shell Oil's negligence in maintaining the Pipe Line was not sufficient to provide notice to Shell Oil of a federal officer defense.[62] In addition, *367 the extensive litigation in the state court which occurred before Shell Oil had notice that the case was removable, as noted above, cannot bar removal.[63] Shell Oil's Notice of Removal was timely filed.
B. Shell Oil Sufficiently Alleged that It Met the Requirements of Removal Pursuant to Section 1442(a)
In their second and third objections, plaintiffs dispute Judge Bernthal's finding that Shell Oil acted under federal agency direction during the time covered by the Complaint.[64] In their Motion for Remand, plaintiffs claimed that Shell Oil was not acting under color of a federal office when it caused plaintiffs' injuries because the "time of the conduct of which plaintiffs complain" was 1988, and the Congressional programs Shell Oil claimed required it to use MTBE were not adopted until 1990 and 1995.[65] In response, Shell Oil asserted that plaintiffs had alleged groundwater contamination "from continuous and/or additional releases of MTBE-containing gasoline occurring to the present."[66]
In his R & R, Judge Bernthal observed that the plaintiffs' claims did not rest solely on the 1988 pipeline spill because plaintiffs had alleged acts that continued through the time of the RFG program.[67] The R & R made specific reference to allegations that damages resulted from pipeline leakage that was never permanently sealed off and allegations that Shell Oil "maintained and controlled a `continuing source of contamination'" from the time of the spill until the filing of the Complaint.[68] Plaintiffs, in turn, argue that those allegations do not refer to MTBE.[69] Indeed, plaintiffs claim that they never alleged that MTBE spilled from the Pipe Line after 1988.[70]
While plaintiffs' argument is creative, it does not comport with a plain reading of the Third Amended Complaint. Plaintiffs alleged in that Complaint that "Shell Oil took affirmative actions that led to the past, present, and continuing contamination with MTBE."[71] In addition, plaintiffs *368 alleged that "gasoline constituents, including MTBE, continue to persist in surface water and groundwater in the general vicinity of the release, indicating that an additional subsurface Pipe Line leak or spill has occurred or, . . . that leakage from the original Pipe Line release location was never permanently sealed off."[72] Plaintiffs also point to the deposition of Steven Schuler, a longtime employee of Shell Pipe Line, who testified on July 18, 2005, in a different case, that no pipeline leakage occurred after 1988.[73] Based on this testimony, plaintiffs claim that Shell Oil should not be allowed to assert that MTBE contamination occurred subsequent to 1988.[74]
This evidence is irrelevant. As noted earlier, a defendant must satisfy its burden of proving that removal was appropriate as of the time of removal.[75] The Third Amended Complaint alleged that Shell Oil's actions to the present day caused their harm. This was the allegation Shell Oil considered at the time of removal. This Court has already found that it has federal agent jurisdiction over some of the MTBE cases pending before it.[76] Shell Oil has shown that it acted under the direction of a federal office when it used MTBE-containing gasoline during the time period alleged in the Complaint.[77]
VI. CONCLUSION
For the reasons set forth above, Judge Bernthal's Report is accepted and plaintiffs' objections are denied. The Clerk of the Court is directed to close this motion (docket # 771). A conference is scheduled for November 15, 2005, at 4:30 p.m. in Courtroom 15C.
SO ORDERED.
NOTES
[1] See Magistrate Judge David G. Bernthal's Report & Recommendation, Quick, et al. v. Shell Oil Co., et al., No. 05-2072 (C.D.I11. Aug. 3, 2005) ("R & R"), Ex. 1 to Plaintiffs' Objections to Magistrate Judge's Report and Recommendation re Plaintiffs' Motion to Remand and Memorandum of Law in Support Thereof ("Objections").
[2] Objections ¶¶ 1-3 (quoting R & R at 2, 8).
[3] 28 U.S.C. § 636(b)(1).
[4] For a full recitation of plaintiffs' fact allegations in this MDL see In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 175 F.Supp.2d 593 (S.D.N.Y.2001) ("MTBE I") (concerning preemptive effect of Clean Air Act); In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 209 F.R.D. 323 (S.D.N.Y.2002) ("MTBE II") (denying class certification); In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 342 F.Supp.2d 147 (S.D.N.Y.2004) ("MTBE III") (federal agent jurisdiction); In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 341 F. Supp.2d 351 (S.D.N.Y.2004) ("MTBE IV") (declining to abstain); In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 341 F.Supp.2d 386 (S.D.N.Y.2004) ("MTBE V") (bankruptcy jurisdiction); In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 361 F.Supp.2d 137 (S.D.N.Y.2004) ("MTBE VI") (sovereign immunity); In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 364 F.Supp.2d 329 (S.D.N.Y.2004) ("MTBE VII") (preemption constitutes a colorable federal defense for purposes of the federal officer removal statute).
[5] See 12/12/01 Complaint at Law, Quick, et al. v. Shell Oil Co., et al., No. 01-L-147 (Ill. Cir. Kankakee County) ("Compl.") ¶¶ 3, 41 (listing "MTBE, BETX compounds, including benzene, toluene, and xylem," as contaminants of the potable water supply). The facts recited herein are mere allegations, and do not constitute findings of the Court.
[6] See 2/21/02 First Amended Complaint, Quick, et al. v. Shell Oil Co., et al., No. 01-L-147 (Ill. Cir. Kankakee County) ("Complaint I"); 5/28/02 Second Amended Complaint, Quick, et al. v. Shell Oil Co., et al., No. 01-L-147 (Ill. Cir. Kankakee County) ("Complaint II"), Ex. 2 to Objections.
[7] See Complaint II ¶ 4.
[8] Id. ¶ 16.
[9] See id. ¶ 7.
[10] Id. ¶ 47.
[11] See 3/11/05 Order, Ex. A to Notice of Removal of Shell Oil Company ("Shell Oil's Notice of Removal").
[12] See 3/15/05 Plaintiffs' Third Amended Complaint, Quick, et al. v. Shell Oil Co., et al., No. 01-L-147 (Ill. Cir. Kankakee County) ("Complaint III") ¶ 58, Ex. B to Shell Oil's Notice of Removal.
[13] See id. ¶ 61.
[14] Id. ¶ 63.
[15] See id. ¶¶ 245-248.
[16] See Shell Oil's Notice of Removal ¶¶ 8, 9 (citing 28 U.S.C. § 1442(a)(1) and 28 U.S.C. § 1441(a), respectively). Shell Pipe Line, Equilon, and the Parsons defendants consented to Shell Oil's Notice of Removal. See Consents to Remove, Ex. C to Shell Oil's Notice of Removal.
[17] Shell Oil's Notice of Removal ¶ 15.
[18] Shell Oil Company's Response to Plaintiffs' Objections to Magistrate Judge Bernthal's Report and Recommendation on Plaintiffs' Motion to Remand at 5.
[19] Shell Oil's Notice of Removal ¶ 5. In particular, Shell Oil explained that "the Chicago, Illinois area is governed by RFG requirements" and that from January 1, 1995 until approximately June 1995, "Defendant complied with RFG requirements" by supplying the Chicago, Illinois area with MTBE-containing gasoline that was transported through the portion of the Pipe Line in Limestone Township, Illinois. Id. ¶ ¶¶ 23-26.
[20] See id. ¶ 12.
[21] See Plaintiffs' Motion for Remand and Objections to Removal ("Motion for Remand") at 1.
[22] R & R at 12.
[23] See, e.g., Complaint III ¶ 63 ("Before introducing MTBE into gasoline, Shell Oil knew or reasonably should have known, ... that MTBE released into the environment would mix easily with ground water, resist biodegradation and/or bioremediation, render drinking water unsafe and/or non-potable, and cause significant expenses to remove from private wells.").
[24] R & R at 9 (citing MTBE III, 342 F.Supp.2d at 153-54).
[25] See id. at 6 (finding that the "federal issues involved" did not create a substantial question of federal law under Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 813, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)).
[26] See id. at 12. Specifically, the Judge found that the first three Complaints did not allege any "federal direction behind the spill or Defendant's purported negligence in its response to the spill." Id.
[27] R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 655 (2d Cir.1979) (quoting McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)).
[28] Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1046 (2d Cir.1991) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed, 1214 (1941)). Accord Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 31, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002) (noting that "statutory procedures for removal are to be strictly construed").
[29] See, e.g., Kings Choice Neckwear, Inc. v. DHL Airways, Inc., No. 02 Civ. 9580, 2003 WL 22283814, at *2 (S.D.N.Y. Oct.2, 2003) (citation omitted).
[30] See 28 U.S.C. § 1441(a).
[31] See Merrell Dow Pharm., Inc., 478 U.S. at 808, 106 S.Ct. 3229; Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).
[32] Grable & Sons Metal Prods., Inc., v. Darue Eng'g & Mfg., ___ U.S. ___, 125 S.Ct. 2363, 2368, 162 L.Ed.2d 257 (2005). Accord Broder v. Cablevision Sys. Corp., 418 F.3d 187 (2d Cir.2005).
[33] Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). Two exceptions to the well-pleaded complaint rule permit removal of state law actions: when the claims are completely preempted by federal law and when Congress "expressly so provides" for removal of those claims. Id. at 8, 123 S.Ct. 2058. Neither of these exceptions is relevant here.
[34] Marcus v. AT & T Corp., 138 F.3d 46, 53 (2d Cir.1998) (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). Accord City of Rome v. Verizon Commc'ns, Inc., 362 F.3d 168, 174 (2d Cir.2004).
[35] Whitaker v. American Telecasting, Inc., 261 F.3d 196, 206 (2d Cir.2001) (holding that pleading which provided incomplete address information did not allow the defendant to "intelligently ascertain" removability; the defendant was not required to research the missing address of another named defendant to discover removability) (quotation marks omitted).
[36] Id.
[37] Richstone v. Chubb Colonial Life Ins., 988 F.Supp. 401, 403 (S.D.N.Y.1997) ("A defendant must be able to ascertain easily the necessary facts to support his removal petition. To allow a document with less information to satisfy the statute would require the movant to `guess' as to an actions' removability, thus encouraging premature, and often unwarranted, removal requests.") (citations omitted).
[38] See Pullman Co. v. Jenkins, 305 U.S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334 (1939). See also Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir.2003) ("we generally evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed").
[39] Watkins v. Grover, 508 F.2d 920, 921 (9th Cir.1974) (finding that where a case was removed to federal court based on federal officer jurisdiction, the district court could retain jurisdiction to hear the state law claims against the remaining defendants even when the federal officers were dismissed).
[40] Murphy v. Kodz, 351 F.2d 163, 167 (9th Cir.1965) (finding that in a case properly brought federal court, the "plaintiffs subsequent reduction of his claim to less than the jurisdictional amount" did not "disturb the diversity jurisdiction of a federal court"). Accord New Jersey Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Serv. Inc., 719 F.Supp. 325, 334 (D.N.J.1989) ("If a court dismissed the federal defendant from ... a case [removed pursuant to section 1442(a)(1)], it must use its discretion to decide whether to remand the remaining ancillary claims to state court or to maintain jurisdiction over those claims.").
[41] See Mesa v. California, 489 U.S. 121, 136, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989).
[42] Jefferson County v. Acker, 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999). Accord Mesa, 489 U.S. at 133-35, 109 S.Ct. 959; In re Agent Orange Prod. Liab. Litig., 304 F.Supp.2d 442, 446 (E.D.N.Y.2004); 16 James Wm. Moore et al., Moore's Federal Practice ("Moore's"), ¶ 107.15[1][b][ii].
[43] The requirement for a federal defense is broadly construed; a defense need only be colorable, not clearly sustainable. See Jefferson County, 527 U.S. at 431, 119 S.Ct. 2069 ("We ... do not require the officer virtually to `win his case before he can have it removed.'") (citation omitted); Colorado v. Symes, 286 U.S. 510, 519, 52 S.Ct. 635, 76 L.Ed. 1253 (1932) (where a defendant seeks removal pursuant to the federal officer removal statute, "no determination of fact is required but it must fairly appear from the showing made that [the defendant's removal] claim is not without foundation and is made in good faith").
[44] The statute provides in pertinent part: "[A] notice of removal of a civil action or proceeding shall be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b).
[45] See Somlyo, 932 F.2d at 1046 ("federal courts rigorously enforce the statute's thirty-day filing requirement").
[46] Whitaker, 261 F.3d at 202 ("the commencement of the removal period [can] only be triggered by formal service of process, regardless of whether the statutory phrase `or otherwise' hints at some other proper means of receipt of the initial pleading") (citing Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 354-55, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999)).
[47] 28 U.S.C. § 1446(b) (emphasis added).
[48] Moore's ¶ 107.30[3][a][ii]. Accord Lovern v. General Motors Corp., 121 F.3d 160, 162 (4th Cir.1997) ("The statute does not preclude defendants from removing a case where their discovery of the grounds of federal jurisdiction is belated because facts disclosing those grounds were inadequately or mistakenly stated in the complaint.").
[49] Yankee Bank for Fin. & Say., FSB v. Hanover Square Assocs.-One Ltd. P'ship, 693 F.Supp. 1400, 1411 (N.D.N.Y.1988) (quoting Wilson v. Intercollegiate (Big Ten) Conference Athletic Assoc., 668 F.2d 962, 965 (7th Cir. 1982)).
[50] See Powers v. Chesapeake & Ohio Ry. Co., 169 U.S. 92, 100-01, 18 S.Ct. 264, 42 L.Ed. 673 (1898) (interpreting congressional intent in providing for removal and stating, "[t]he reasonable construction of the act of Congress, and the only one which will prevent the right of removal, to which the statute declares the party to be entitled, from being defeated by circumstances wholly beyond [the defendant's] control, is to hold that the incidental provision as to the time must, when necessary to carry out the purpose of the statute, yield to the principal enactment as to the right" and that the statute permits and requires "the defendant to file a petition for removal as soon as the action assumes the shape of a removable case in the court in which it was brought"); H. Rep. 352, 81st Cong. (1st Sess. 1949) reprinted in 1949 U.S.Code & Cong. Serv. at 1254, 1268 (explaining that the addition of the provision allowing removal when the initial pleading does not state a removable case was meant to codify the finding in Powers, 169 U.S. 92, 18 S.Ct. 264, to allow removal of an action whenever removability is disclosed).
[51] See In re Willis, 228 F.3d 896, 897 (8th Cir.2000) ("thirty-day period begins running on receipt of complaint only when complaint explicitly discloses [basis for federal jurisdiction]").
[52] See 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 3733 at 309-10 (1998) (noting that "depositions, answers to interrogatories, and requests for admissions, amendments to ad damnum clauses of the pleadings, and correspondence between the parties and their attorneys or between the attorneys are usually accepted as `other paper' sources that initiate a new thirty day period of removability," and collecting cases). The phrase "other paper" generally refers to "documents generated within the state court litigation." Zbranek v. Hofheinz, 727 F.Supp. 324, 326 (E.D.Tex.1989).
[53] Poss v. Lieberman, 299 F.2d 358, 359 (2d Cir.1962).
[54] See Whitaker, 261 F.3d at 204 ("The legislative history [of section 1446(b)] reflects a clear concern for ensuring that a defendant `know[ ] what the suit is about' before triggering the removal clock.").
[55] See Soto v. Apple Towing, 111 F.Supp.2d 222, 226 (E.D.N.Y.2000) (citing Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir.1998) (a defendant must have unequivocal notice of removability that does not require "an extensive investigation to determine the truth")). See also DeBry v. Transamerica Corp., 601 F.2d 480, 489 (10th Cir.1979) (holding that "if the statute is going to run, the notice ought to be unequivocal. It should not be one which may have a double design."); Pack v. AC & S, 838 F.Supp. 1099, 1102 (D.Md.1993) (finding that removal pursuant to section 1442(a) was timely when filed within thirty days of date when plaintiffs served defendant with information that specific "steam turbine generators manufactured at the Baltimore Shipyards were the subject of the litigation" providing defendant "with sufficient information ... to determine that the turbines were made according to government specifications and that removal was available based on the government contractor defense").
[56] Soto, 111 F.Supp.2d at 224. Accord Akin, 156 F.3d at 1036; Bosky v. Kroger Tex., LP, 288 F.3d 208, 211 (5th Cir.2002) (citations omitted) ("[T]he information supporting removal in a copy of an amended pleading, motion, order or other paper must be `unequivocally clear and certain' to start the time limit running for a notice of removal under the second paragraph of section 1446(b). This clearer threshold promotes judicial economy. It should reduce `protective' removals by defendants faced with an equivocal record. It should also discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of the facts. In short, a bright-line rule should create a fairer environment for plaintiffs and defendants.").
[57] While a "federal court is bound to consider the stage of the state court litigation in ruling on a motion to remand" the mere fact that an action has progressed in state court does not require remand absent some other basis. Zbranek, 727 F.Supp. at 326 (citations omitted) (noting that remand was appropriate because state court litigation had advanced considerably; but resting remand decision on finding that defendants had failed to show that another paper pursuant to section 1446(b) had allowed defendants to ascertain removability). See also Adams v. Lederle Labs., 569 F.Supp. 234, 247 (W.D.Mo.1983) ("Where the second paragraph of section 1446(b) provides the operative law for a case, it is obvious that a defendant's acts in the state court, taken before the case became removable or before the defendant was able to determine that the case was removable, cannot be taken as a waiver of the right to remove.").
[58] Potter v. Carvel Stores of New York, Inc., 203 F.Supp. 462, 467 (D.Md.1962), aff'd, 314 F.2d 45 (4th Cir.1963) (citations omitted).
[59] Objections (quoting Complaint II ¶¶ 8, 10, 37, 41).
[60] See Compl. ¶¶ 10, 37, 41; Complaint I ¶¶ 10, 37, 41; Complaint II ¶¶ 8, 10, 37, 41.
[61] See Complaint III ¶ 248.
[62] Shell Oil does not claim its right to removal was revived, but that the initial pleading was not removable. In their objection, plaintiffs cite inapposite cases where defendants unsuccessfully sought to prove that their right to removal was revived because the initial complaint was amended so "`drastically that the purposes of the 30-day limitation would not be served by enforcing it.'" Objections at 7-8 (quoting Wilson, 668 F.2d at 964; Cantrell v. Great Republic Ins. Co., 873 F.2d 1249, 1255 (9th Cir.1989) (finding that removal was untimely and that plaintiff's addition of a plaintiff and defendant did not change the nature of the action and did not restart the removal clock); Samura v. Kaiser Found. Health Plan, Inc., 715 F.Supp. 970, 972 (N.D.Cal.1989) (where an initial complaint was removable, subsequent events do not make it "more removable" or "again removable") (citations omitted); Jeffrey M. Goldberg & Assoc. v. Collins, Tuttle & Co., 739 F.Supp. 426, 430 (N.D.Ill.1990) (finding that the addition of a "new tortious interference claim" that did not change the basic legal theory in an initially removable complaint did not restart the removal clock); Potty Pals, Inc. v. Carson Fin. Group, Inc., 887 F.Supp. 208, 209 (E.D.Ark.1995) (finding that the addition of a claim for a preliminary and permanent injunction where no change occurred in the basic nature of the complaint did not restart the clock for removal on a complaint which was initially removable)).
[63] See, e.g., Hibbs v. Consolidation Coal Co., 842 F.Supp. 215, 216 (N.D.W.Va.1994) (initially non-removable action was removed within thirty days of amendment to the complaint, though case had been ongoing in state court for a year).
[64] See Objections at 10; Plaintiffs' Reply to Defendant Shell Oil Company's Response to Plaintiffs' Objections to Magistrate Judge's Report and Recommendation re Plaintiffs' Motion to Remand ("Reply Mem.") at 6-7.
[65] Motion for Remand at 2, 8-9.
[66] Shell Oil Company's Opposition to Plaintiffs' Motion for Remand at 1.
[67] See R & R at 7.
[68] Id. (quoting Complaint III ¶¶ 45, 47).
[69] See Objections at 10.
[70] See id.
[71] Complaint III ¶ 60.
[72] Id. ¶ 10.
[73] 7/18/05 Deposition of Steven Schuler, County of Kane v. Shell Pipeline Company LP, et al., No. 04 Civ. 8014 (N.D.Ill) at 24-25, Ex. 1 to Reply Mem.
[74] See Reply Mem. at 7-8.
[75] See Pullman, 305 U.S. at 537, 59 S.Ct. 347; Vera, 335 F.3d at 116.
[76] See MTBE III, 342 F.Supp.2d 147; MTBE V, 341 F.Supp.2d at 416; MTBE VI, 361 F.Supp.2d 137; MTBE VII, 364 F.Supp.2d 329.
[77] Whether this case raises a substantial federal question under the recent Supreme Court decision in Grable was not addressed by any party. See supra note 32 (citing Grable, 125 S.Ct. at 2368; Broder, 418 F.3d 187). MTBE V, which rejected the argument that substantial federal question jurisdiction existed over the MTBE actions, was issued prior to Grable. While I need not decide at this time whether jurisdiction based on a substantial federal question would exist in these consolidated actions, in light of Grable I cannot foreclose that possibility.