**MBIA INSURANCE CORPORATION and Lacrosse Financial Products, LLC, Plaintiffs,**

v.

**ROYAL BANK OF CANADA and RBC Capital Markets Corporation, Defendants.**

**Case No. 09–CV–5044 (KMK).**

United States District Court, S.D. New York.

Dec. 30, 2009.

---

Philippe Zuard Selendy, Esq., John H. Chun, Esq., Calli Ray, Esq., Quinn Emanuel Urquhart Oliver & Hedges LLP, New York, NY, for Plaintiffs.

Scott Sonny Balber, Esq., Emily Abrahams, Esq., Marc Ashley, Esq., Chadbourne & Parke LLP, New York, NY, for Defendants.

## OPINION AND ORDER

KENNETH M. KARAS, District Judge:

Defendants Royal Bank of Canada ("RBC") and RBC Capital Markets Corporation ("RBCCMC") removed the present action from state court. Plaintiffs MBIA Insurance Corporation ("MBIA") and LaCrosse Financial Products, LLC ("LaCrosse") move to remand this case back to state court and for attorneys' fees.

For the reasons stated herein, Plaintiffs' Motion to Remand is granted, but their Motion for Attorneys' Fees is denied.

## I. Background

### A. Factual Background

Plaintiffs' principal places of business are in Westchester, New York. (Chun Aff. Ex. A at 1.) Defendant RBC has its principal place of business in London, United Kingdom, and Defendant RBCCMC has its principal place of business in New York, New York. (Chun Aff. Ex. A at 1.) Royal Bank of Canada Europe Limited ("RBC Euro") has its principal place of business in England, and is also a wholly-owned subsidiary of RBC.[1] (Chun Aff. Ex. C ¶ 29.)[2]

LaCrosse entered into three credit default swap contracts ("Logan CDS contracts"), with RBC between September 2005 and July 2007. (Chun Aff. Ex. A at 2.) Each Logan CDS contract involved a collateralized debt obligation ("CDO"), called Logan CDO I, Ltd. ("Logan I"), Logan CDO II, Ltd. ("Logan II"), and Logan CDO III, Ltd. ("Logan III"), respectively. (Id.) In the Logan CDS contracts, LaCrosse was the "credit protection seller," which means that LaCrosse assumed the risk of loss if certain credit events, such as default, occurred in the underlying CDOs. (Chun Aff. Ex. C ¶ 34.) In exchange, LaCrosse was to receive "premium payments" from RBC, which was the credit protection buyer, during the swap. (Id. ¶ 35.) In connection with the Logan CDS contracts, MBIA entered into three corresponding Financial Guaranty Insurance Policies ("Financial Guaranties") that provided financial guarantee insurance coverage to RBC in the event La-

Crosse failed to pay its contractual obligations under the Logan CDS contracts when a qualifying credit event occurred. (Defs.' Mem. of Law in Opp'n to Pls.' Mot. to Remand ("Defs.' Mem.") 3.) Only LaCrosse and RBC, not RBCCMC (or any other entity), were signatories to the Logan CDS contracts. (Id. at 2–3.) Similarly, RBCCMC is not a signatory to the Financial Guaranties. (Id. at 3.)

According to Plaintiffs, RBC and RBCCMC arranged the Logan CDS contracts and marketed them to LaCrosse and MBIA. (Chun Aff. Ex. A at 2.) Plaintiffs claim that RBCCMC took a leading role in the marketing and negotiating of the Logan I and II CDS contracts. (Chun Aff. Ex. C ¶ 42.) Furthermore, Plaintiffs allege that documents, pitchbooks, rating agency letters, and other documents were sent to Plaintiffs by people using RBCCMC email addresses. (Id. ¶ 43.)

Plaintiffs claim that after the closing of the Logan CDS contracts, RBC and RBCCMC "issued Credit Event Notices ("CENs") to Plaintiffs that failed to comply with, and resulted in breaches of, the terms of the CDS Contracts including, without limitation, [Defendants'] failure to: (a) properly serve and notify Plaintiffs of the credit events; (b) provide contractually-required information and verification of the credit events; and (c) conduct proper dealer polling following credit events in accordance with valuation procedures in the [Logan] CDS [c]ontracts." (Chun Aff. Ex. A at 2.) According to Plaintiffs, these

---

**1.** RBC Euro is not a named Defendant in the current action. (Chun Aff. Ex. A at 1). Plaintiffs added RBC Euro as a defendant in a Proposed Complaint, which is more fully described below. (Chun Aff. Ex. C.) RBC Euro's involvement is useful for clarifying the factual background, but as a diverse defendant, RBC Euro's role is immaterial to the jurisdictional matters at issue in the instant motion.

**2.** As discussed in detail below, Exhibit C to the Chun Affidavit is a complaint Plaintiffs propose to file in this case ("the Proposed Complaint"). The Court will consider the allegations in the Proposed Complaint, which has not been filed, only to the extent that they clarify Plaintiffs' breach of contract claim and the amount in controversy.

actions constituted breaches of the Logan CDS contracts. (*Id.*) Plaintiffs also allege that both Defendants were responsible for "fail[ing] to deliver securities with the credit quality promised" and "select[ing] credits of inferior quality" for the CDO pools, in violation of the Logan CDS contracts. (*Id.*) Plaintiffs claim that they "have performed each of their obligations under" the Logan CDS contracts. (*Id.*)

## B. Procedural Background

On May 22, 2009, Plaintiffs initiated this action by filing a Summons with Notice in the Supreme Court of the State of New York in the County of Westchester. (Chun. Aff. Ex. A at 1.) The Summons with Notice listed RBC and RBCCMC as defendants. (*Id.*) The Summons with Notice stated that the action was "to enforce three credit default swap contracts" and that both Defendants had breached the Logan CDS contracts. (*Id.* at 2.) After summarizing the conduct alleged to have breached the contracts, the Summons with Notice requested "enforcement of the CDS Contracts, judgment declaring that [Defendants] ha[ve] materially breached their terms and . . . damages in an amount to be determined." (*Id.*)

On May 28, 2009, within a week of the filing of the Summons with Notice, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Balber Aff. Ex. H at 1.) In the removal petition, Defendants stated that the Court had diversity jurisdiction because "the proper parties to this action are completely diverse." (*Id.* at 2.) Defendants claimed that RBCCMC, the only non-diverse Defendant, was "improperly joined . . . in an attempt to defeat diversity jurisdiction." (*Id.* at 3.) In particular, Defendants explained that Plaintiffs' only claims were for breach of contract and that RBCCMC, as a non-signatory to the contracts at issue, could not be liable for those breaches. (*Id.* at 3–4.) On June 17, 2009, Defendant

RBC filed an Answer and asserted counterclaims against Plaintiffs. (Dkt. No. 4.)

Plaintiffs timely filed the instant motion on July 17, 2009, and the motion was fully submitted on September 2, 2009. (Dkt. No. 14.) The Court held oral argument on December 7, 2009.

## II. Discussion

### A. Standard of Review

■ Federal courts have original jurisdiction over civil actions in which the dispute is between citizens of different states and in which the sum in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). In order to obtain diversity jurisdiction, there must be "complete diversity" so that no adverse parties are citizens of the same state. *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). The federal removal statute allows a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a); *see Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 84, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005) ("Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity . . . ."). A diversity case may only be removed if none of the properly joined defendants is a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). A defendant must file a notice of removal within thirty days of receipt "of the initial pleading setting forth the claim for relief upon which such action or proceeding is based. . . ." *Id.* § 1446(b). "If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. . . ." *Id.*

■ In evaluating the propriety of a removal, the Court starts with the baseline principle that federal courts are courts of limited jurisdiction. *See Keene Corp. v. United States*, 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993). Accordingly, "removal jurisdiction exists in a given case only when that jurisdiction is expressly conferred on the courts by Congress." *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F.Supp.2d 357, 367 (S.D.N.Y.2006) (internal quotation marks omitted); *see also Irving Trust Co. v. Century Exp. & Imp., S.A.*, 464 F.Supp. 1232, 1234 (S.D.N.Y. 1979) (noting that the right of removal is "a matter of legislative grace" (citing *Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 280, 38 S.Ct. 237, 62 L.Ed. 713 (1918))). Judicial scrutiny is especially important "in the context of removal, where considerations of comity play an important role." *Johnston v. St. Paul Fire & Marine Ins. Co.*, 134 F.Supp.2d 879, 880 (E.D.Mich.2001). Indeed, "[o]ut of respect for the independence of state courts, and in order to control the federal docket, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F.Supp.2d 177, 179 (S.D.N.Y.2003) (internal quotation marks omitted); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) (noting that federalism concerns call for "the strict construction" of the removal statute); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir.1994) ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." (internal citation omitted)); *Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F.Supp.2d 320, 324 (S.D.N.Y.2005) ("Removal jurisdiction is strictly construed inasmuch as it implicates significant federalism concerns and abridges the deference courts generally give to a plaintiff's choice of forum.").

■ As a general matter, the party asserting federal jurisdiction bears the burden of proving that the case is properly in federal court. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). "Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper." *United Food & Commercial Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994).

### B. Summons with Notice as an Initial Pleading

Plaintiffs only filed a Summons with Notice in state court before Defendants removed. The Summons states that "Plaintiffs' principal office and/or place of business is in [Westchester] County." (Chun Aff. Ex. A at 1.) It also lists RBC's mailing address in London, United Kingdom and RBCCMC's mailing address in New York. (*Id.*) The two-page Notice portion states that "[t]his is an action to enforce three credit default swap contracts made between" Plaintiffs, RBC and RBCCMC, (*id.* at 2), specifying the three Logan CDS contracts, (*id.*). The Notice alleges that Defendants breached the Logan CDS contracts by issuing "Credit Event Notices" that failed to "properly notify Plaintiffs of credit events"; "provide contractually-required information and verification of the credit events"; and "conduct proper dealer polling" and valuation procedures. (*Id.*) The Notice also claims that Defendants breached the Logan CDS contracts by "fail[ing] to deliver securities with the credit quality promised," and by selecting "inferior quality" credits for the collateral pools. (*Id.*) As a

result, Plaintiffs sought "enforcement of the [Logan] CDS [c]ontracts." (*Id.*)

Plaintiffs argue that removal was improper under Section 1446(b) because the Summons with Notice was not an initial pleading. (Pls.' Mem. of Law in Supp. of Mot. to Remand ("Pls.' Mem.") 11.) Specifically, Plaintiffs believe that removability was not ascertainable from the face of the Summons with Notice because it listed RBCCMC, a non-diverse Defendant, on its face. (*Id.* at 11–13.) Furthermore, Plaintiffs argue that removability was not ascertainable because no amount in controversy was provided in the Summons with Notice. (*Id.* at 13.) Defendants, on the other hand, argue that removability was ascertainable on the face of the Summons with Notice, making it an initial pleading subject to removal. (Defs.' Mem. 7–8.) Specifically, Defendants claim that the Summons with Notice provided all the information needed to reasonably ascertain removability, referencing the specific addresses of both Defendants, Plaintiffs' principal places of business, and the specific contracts alleged to have been breached. (*Id.*) Additionally, Defendants argue that Plaintiffs cannot "credibly deny" that they seek damages greater than the jurisdictionally required amount. (*Id.* at 7)

■ In *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196 (2d Cir.2001), the Second Circuit held that a summons with notice filed in accordance with New York State law "may constitute an initial pleading for purposes of the federal removal statute," because New York law requires

"the summons to provide notice stating the nature of the action and the relief sought—that is, information from which a defendant can ascertain removability." [3] *Id.* at 202–04.[4] In *Whitaker*, the court further explained that "[a] case is removable when the initial pleading enables the defendant to intelligently ascertain removability from the face of such pleading, so that in its petition for removal[, the] defendant can make a short and plain statement of the grounds for removal as required [by] 28 U.S.C. § 1446(a)." *Id.* at 205–06 (internal quotation marks and citation omitted) (first alteration in original); *see also Pinson v. Knoll, Inc.*, No. 07–CV–1739, 2007 WL 1771554, at *2 (S.D.N.Y. June 18, 2007) (explaining that an "initial pleading" is defined as " 'any pleading (and not necessarily the complaint) containing sufficient information to enable the defendant to intelligently ascertain the basis for removal' " (quoting *Whitaker*, 261 F.3d at 198)). "A pleading enables a defendant to intelligently ascertain removability when it provides the necessary facts to support" removal; for diversity cases, the facts required include the parties' addresses and the amount in controversy. *Whitaker*, 261 F.3d at 206 (internal quotation marks omitted).

### 1. Diversity Requirement

■ In the instant case, there is no dispute that, as pled, the Summons with Notice fails to assert grounds for diversity jurisdiction—both named Plaintiffs are citizens of New York, and one of the

---

**3.** N.Y. C.P.L.R. § 305(b) provides that "[i]f the complaint is not served with the summons, the summons shall contain or have attached thereto a notice stating the nature of the action and the relief sought, and, except in an action for medical malpractice, the sum of money for which judgment may be taken in case of default." N.Y. C.P.L.R. § 305(b).

**4.** The *Whitaker* court noted that in *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 349–56, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999), the Supreme Court held that "the removal period could only be triggered by formal service of process," but did not address "whether a pleading other than a complaint can constitute the initial pleading under section 1446(b)." *Whitaker*, 261 F.3d at 202.

named Defendants, RBCCMC, is also a citizen of New York. (Chun Aff. Ex. A at 1). Plaintiffs do not dispute that under *Whitaker*, a Summons with Notice may constitute an initial pleading for removal purposes if the necessary facts from which a defendant can ascertain removability are present on the face of the pleading. (Pls.' Reply Mem. of Law in Further Supp. of Their Mot. to Remand ("Pls.' Reply Mem.") 2.) But, because Plaintiffs believe that Defendants could not intelligently ascertain removability, and, therefore, that the Summons with Notice was not an initial pleading, (Pls.' Mem. 1, 12–13), Plaintiffs argue that the "Defendants' Notice of Removal was premature and the Court should remand the action on this basis alone, without even considering Defendants' allegations" that RBCCMC was improperly joined. (*Id.* at 1.)

It is true that the well-pleaded complaint rule generally requires a district court to determine if a complaint includes any causes of action that on their face give a federal court jurisdiction. *See Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). However, an exception to this general principle exists when a defendant asserts removal based on "fraudulent joinder." *See Whitaker*, 261 F.3d at 206–07 ("[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir.1998)) (alteration in original)); *Intershoe, Inc. v. Filanto S.P.A.*, 97 F.Supp.2d 471, 474 (S.D.N.Y.2000) (stating that "[a]n exception to th[e] principles [of diversity] applies when a non-diverse party is 'fraudulently joined' in order to defeat complete diversity"). Courts regularly review pleadings to determine if there has been a fraudulent joinder of parties and will "disregard parties with no real connec-

tion with the controversy" or who are "not a real party in interest." *Intershoe*, 97 F.Supp.2d at 474 (internal quotation marks omitted); *see also Pampillonia*, 138 F.3d at 460–61.

The Court sees no reason why a summons with notice, which may be an initial pleading under *Whitaker*, should be treated differently than a complaint for the purpose of analyzing removal based on a fraudulent joinder claim. In *Moran v. Continental Casualty Co.*, No. 01–CV1008, 2001 WL 1717214 (N.D.N.Y. Nov. 16, 2001), a case similar to the instant action, the plaintiff filed a summons with notice in New York state court that, on its face, pled non-diverse parties. *Id.* at *1. The defendants removed the case to federal court, claiming fraudulent joinder of a non-diverse party. *Id.* The court applied the usual fraudulent joinder analysis to the summons with notice, stating that "[w]here . . . a plaintiff challenges removal on the ground that the presence of non-diverse parties defeats federal jurisdiction, a defendant may show that the non-diverse parties have no real connection with the controversy and were 'fraudulently joined' for the sole purpose of destroying diversity." *Id.* at *2. Indeed, the very purpose of the fraudulent joinder doctrine is to allow defendants to assert removal despite the presence of a non-diverse party on the face of the pleading. *See Blakeman v. Conroy (In re Blakeman)*, 512 F.Supp. 325, 327 (E.D.N.Y.1981) (noting that "the presence of a non-diverse plaintiff may be ignored if it is not a real party in interest" (internal quotation marks omitted)). Here, just as in every case where fraudulent joinder is alleged, Defendants' fraudulent joinder claim allows the Court to analyze whether the case involves a dispute between diverse parties and, therefore, whether removal was proper.

■ Plaintiffs seek a different result, arguing that Defendants prematurely removed because they relied on facts beyond the Summons and Notice to ascertain the basis for removal. Indeed, as noted above, the removal statute expressly permits Defendants to delay removal until thirty days after a pleading first allows Defendants to ascertain the basis upon which a case may be removed. *See* 28 U.S.C. § 1446(b). Thus, if a bare-bones summons with notice fails to provide enough information to allow a defendant applying a "reasonable amount of intelligence [to] ascertain[ ] removability," but a subsequently filed complaint does provide such information, the defendant may remove within thirty days of service of the complaint, not the Summons with Notice. *See Whitaker*, 261 F.3d at 206. But, courts apply this rule to decide whether a particular pleading provided sufficient information regarding removability to trigger the thirty-day time limit on removal. *See, e.g., Josephson v. Oxford Health Ins., Inc*, No. 07–CV–2558, 2008 WL 697609, at *2 (E.D.N.Y. Mar. 11, 2008) (finding defendant's removal untimely when both the summons with notice and the complaint provided the same information to the defendant and when the defendant's "alleged basis for removal could have been asserted in response to [the][p]laintiffs' [s]ummons with [n]otice"); *Gutierrez v. Home Depot U.S.A., Inc.*, No. 03–CV–3709, 2003 WL 22801808, at *1 (S.D.N.Y. Nov. 26, 2003) (finding defendant's removal untimely when summons with notice "was sufficient to allow the defendant to allege New York citizenship and thus to remove"); *Savino v. Gowing*, No. 03–CV–0170E, 2003 WL 21730177, at *2 (W.D.N.Y. July 1, 2003) (stating that a summons with notice constituted an initial pleading, and finding defendants' removal untimely when not made within thirty days, because the "face of the [s]ummons with [n]otice ... demonstrated complete diversity" and listed the nature of the action and the sum due); *cf. Whitaker*, 261 F.3d at 206 (upholding the district court's conclusion that a summons with notice that failed to identify the addresses of all of the parties did not allow the defendants to ascertain removability and did not start the thirty-day removal period).

■ As Defendants point out, the reasonably ascertainable rule protects defendants from losing their right to remove when the jurisdictional details are omitted or misstated in a pleading. *See Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 694 (9th Cir.2005) ("[O]nly where an initial pleading reveals a ground for removal will the defendant be bound to file a notice of removal within 30 days. Where, however, such details are obscured or omitted, or indeed misstated, that circumstance makes the case stated by the initial pleading not removable, and the defendant will have 30 days from the revelation of grounds for removal .... to file its notice of removal." (quoting *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir.1997)) (emphasis and quotation marks omitted)); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 399 F.Supp.2d 356, 364 (S.D.N.Y.2005) ("When a case is removable, but the grounds in the initial complaint are obscured, omitted, or misstated, a defendant has thirty days from the revelation of grounds for removal to file a notice of removal." (internal quotation marks, footnote and citation omitted)). In other words, Defendants are not required to guess at the potential basis for removability. *See Casale v. Metro. Transp. Auth.*, No. 05–CV–4232, 2005 WL 3466405, at *4 (S.D.N.Y. Dec. 19, 2005) (noting that "defendants need not embark on an investigation to discover jurisdictional facts outside the four corners of the pleading"); *In re MTBE*, 399 F.Supp.2d at 363 (stating that the intelligently ascertainable standard "does not require a defendant to look beyond the initial pleading for facts.... Nor does it require a defendant to 'guess'

whether the action is removable" (internal quotation marks and footnote omitted)).

Here, the Summons with Notice sets out the parties, lists Defendants' addresses, and states that Plaintiffs' principal places of business are in Westchester. The Summons with Notice also describes the nature of the action, the events at issue, and the contracts alleged to have been breached. Defendants were therefore able to intelligently ascertain from the face of the pleading the parties, the citizenship of each party, and the nature of the action. No independent investigation was necessary when Defendants were informed of the parties' identities and believed, based on the face of the pleading, that the only non-diverse party was fraudulently joined. Accordingly, Defendants are not barred from asserting removal because the facts regarding diversity are facially evident from the pleading.[5]

### 2. Amount in Controversy Requirement

■ Besides claiming that diversity was not ascertainable, Plaintiffs also assert that the amount in controversy was not ascertainable on the face of the Summons with Notice. (Pls.' Mem. 5.) Courts apply the same standard to the amount in controversy requirement as to the diversity requirement—whether a defendant could intelligently ascertain the amount in controversy from the face of the pleading. *See Whitaker*, 261 F.3d at 206 ("A pleading enables a defendant to intelligently ascertain removability when it provides the necessary facts to support [the] removal ... includ[ing] the amount in controversy ...." (internal quotation marks and citation omitted) (first alternation in original)); *F.W. Myers & Co. v. World Projects Int'l, Inc.*, No. 96–CV–763, 1996 WL 550135, at *3 (N.D.N.Y. Sept. 19, 1996) (stating that thirty-day window for removal began when defendants had "first ascertained that the amount in controversy limit was exceeded" (internal quotation marks omitted)).

■ "Where no amount is specified, this fact alone does not bar a finding that the jurisdictional amount has been met."[6]

---

5. *U.S.E. Prods., Ltd. v. Marvel Enterprises, Inc.*, 314 F.Supp.2d 213 (S.D.N.Y.2004), which Plaintiffs rely on heavily, is distinguishable. In *U.S.E.*, the plaintiffs filed a summons with notice asserting breach of contract, without any specification as to what contract was at issue. *See id.* at 214. The court stated that the defendant "apparently ha[d] some idea of the nature of th[e] lawsuit because its petition for removal identifies the contract which it believes is" at issue. *Id.* The court then held that the summons with notice was not an initial pleading and that the defendant's removal, based on a fraudulent joinder claim, was premature. *Id.* at 215. As Defendants point out, unlike the Summons with Notice here, the summons with notice in *U.S.E.* did not specify a contract so as to allow the defendants to ascertain the relevant signatories to the contract. Without that information, the defendants in *U.S.E.* could not have ascertained whether the non-diverse party was fraudulently joined. In contrast, the Summons with Notice in this case clearly identifies the relevant contracts, allowing De-

fendants to intelligently ascertain the relevant signatories, and to ascertain whether a party might have been fraudulently joined.

6. This is true regardless of the fact that under N.Y. C.P.L.R. § 305, a summons with notice "shall contain thereto a notice stating the nature of the action and the relief sought, and ... the sum of money for which judgment may be taken in case of default." N.Y. C.P.L.R. § 305. As an initial matter, courts in New York have routinely held that "the absence of a monetary amount in a notice served with a summons is a correctable irregularity," and not a jurisdictional defect. *Sherk v. Sherk*, 37 A.D.3d 1062, 829 N.Y.S.2d 774, 774 (2007) (mem.) (internal quotation marks omitted); *see also Premo v. Cornell*, 71 A.D.2d 223, 423 N.Y.S.2d 64, 65 (1979). Furthermore, defendants waive objections to failures to comply with Section 305(b) "by appearing in the action, answering the complaint, and litigating the merits." *Sirkis v. Cohen*, 23 A.D.3d 369, 805 N.Y.S.2d 550, 551 (2005). More importantly, "[i]t is the lan-

*Burr,* 478 F.Supp.2d at 438 (footnote omitted). Instead, in such a case, a defendant asserting removability must show "that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Mehlenbacher,* 216 F.3d at 296 (quoting *United Food,* 30 F.3d at 305). Specifically, Defendants must establish the required amount in controversy "with 'competent proof' and 'justify [the] allegations by a preponderance of evidence.'" *United Food,* 30 F.3d at 305 (quoting *McNutt,* 298 U.S. at 189, 56 S.Ct. 780); *see also Burr,* 478 F.Supp.2d at 438 (same); *James v. Gardner,* No. 04–CV– 1380, 2004 WL 2624004, at *3 (S.D.N.Y. Nov. 10, 2004) (same). Defendants may rely on, and courts may consider, evidence outside of a plaintiff's pleadings to establish the amount in controversy if the pleading is facially inconclusive. *See United Food,* 30 F.3d at 305; *Burr,* 478 F.Supp.2d at 438 (noting that courts may "examine the nature of the claims, factual allegations within the pleadings, and the record outside the pleadings to determine the

amount in controversy" when no amount is specified (footnote omitted)); *F.W. Myers,* 1996 WL 550135, at *3 (finding that information contained in a proposed complaint "was sufficient for defendant to intelligently ascertain" the amount in controversy).

Here, Defendants have shown by a preponderance of evidence that the amount in controversy requirement is met. Plaintiffs stated in the Summons with Notice that the action is "to enforce three credit default swap contracts made between" the Plaintiffs and the Defendants, which "reference, respectively, three collateralized debt obligations." (Chun Aff. Ex. A at 2.) Based upon alleged breaches of those contracts, Plaintiffs seek, *inter alia,* enforcement of the contracts and "damages in an amount to be determined." (*Id.*) Despite the lack of a specified damages amount, Defendants were able to intelligently ascertain that the amount in controversy exceeded $75,000 when they knew that the contracts identified in the Summons with Notice were worth billions of dollars. *See Zido v. Werner Enters., Inc.,* 498

guage of the federal removal statute itself, rather than local law, which . . . determines whether the summons and notice" is an initial pleading. *Universal Motors Group of Cos. Inc. v. Wilkerson,* 674 F.Supp. 1108, 1110 (S.D.N.Y.1987); *see also Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 104, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) ("The removal statute, which is nationwide in its operation, was intended to be uniform in its application. . . . Hence the [removal statute] must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits are to be removed. . . ."); *Williams v. Beemiller, Inc.,* No. 05–CV–836S, 2009 WL 1812819, at *4 (W.D.N.Y. June 25, 2009) ("The removal statute is construed according to federal law.").

Thus, to be an initial pleading for removal, the summons with notice must meet the *federal* requirement that the amount in controversy is intelligently ascertainable, not the New York state requirement that an amount of damages be specified in case of default. *See Universal Motors,* 674 F.Supp. at 1113 ("[T]o

constitute an 'initial pleading' under the *federal* statute, the summons with notice . . . need only have allowed the defendants [to] intelligently [ ] ascertain removability." (emphasis in original)); *see also Flood v. Celin Jewelry, Inc.,* 775 F.Supp. 700, 701 (S.D.N.Y.1991) (summons with notice adequately alleged federal question jurisdiction and was removable despite not specifying damages amount in notice). As explained above, federal courts allow a defendant to remove when the amount in controversy in a complaint is not specified, so long as the defendant can show a reasonable probability that the damages exceed $75,000. *See Mehlenbacher v. Akzo Nobel Salt, Inc.,* 216 F.3d 291, 296 (2d Cir.2000). If defendants can intelligently ascertain the amount in controversy from a complaint that does not specify the precise amount of damages, *see Burr ex rel. Burr v. Toyota Motor Credit Co.,* 478 F.Supp.2d 432, 438 (S.D.N.Y. 2006), there is no reason why Defendants here cannot intelligently ascertain the damages from a summons with notice that does not specify the precise damages.

F.Supp.2d 512, 513–514 (N.D.N.Y.2006) (finding that "[a]lthough [p]laintiffs do not specify a precise dollar amount sought" a fair reading of the complaint showed that plaintiffs' claims for damages exceeded $75,000 when plaintiffs claimed, *inter alia*, serious injuries, medical expenses and loss of consortium); *James*, 2004 WL 2624004, at *4 (noting that although the complaint merely stated that the $25,000 jurisdictional requirement for New York state court was met, defendant showed reasonable probability that damages exceeded $75,000 when complaint alleged "severe and permanent personal injuries" (internal quotation marks omitted)); *Viens v. Wal–Mart Stores, Inc.*, No. 96–CV–2602, 1997 WL 114763, at *2–3 (D.Conn. Mar. 4, 1997) (finding reasonable probability that amount in controversy requirement was satisfied when plaintiff's complaint alleged severe injuries and lost wages). Indeed, Defendants faced the possibility of losing their ability to remove if a court found that the amount in controversy was ascertainable from the face of the Summons with Notice and Defendants waited more than thirty days from service of the Summons with Notice to remove. *See Burr*, 478 F.Supp.2d at 439 (finding defendant's removal untimely because amount in controversy was ascertainable from the face of the pleading, which did not specify a damages amount, when plaintiff alleged "serious and severe permanent personal injuries" and invoked a statute encompassing death and dismemberment (internal quotation marks omitted)); *Caribbean Fertilizers Group, Ltd. v. Fersan Fertilizantes Santo Domingo, C. por A.*, No. 02–CV–9919, 2003 WL 21961124, at *3 (S.D.N.Y. 2003) (finding defendant's removal untimely when defendant could have intelligently ascertained removability based on the allegation in the complaint and defendant's knowledge of plaintiffs' likely lost profits).

Moreover, as explained above, the Court may look to the Proposed Complaint in considering the amount in controversy because Plaintiffs' pleading is inconclusive. *See United Food*, 30 F.3d at 305 ("Where the pleadings themselves are inconclusive as to the amount in controversy ... federal courts may look outside those pleadings to other evidence in the record."); *Burr*, 478 F.Supp.2d at 438 (noting that when no amount in controversy is specified in a pleading, "courts examine the nature of the claims, factual allegations within the pleadings, and the record outside the pleadings to determine the amount in controversy" (footnotes omitted)). The Proposed Complaint states that the three contracts have a collective "face value of $4.425 billion." (Chun Aff. Ex. C ¶ 1.) Specifically, Plaintiffs allege that in connection with the Logan III CDS contract, Plaintiffs paid Defendant RBC $31,423,481.91 in response to a Demand for Payment, reserving their rights under the contracts. (*Id.* ¶¶ 110, 112.) Plaintiffs further state that RBC "will continue to make payment demands" against the Plaintiffs, and that as a result, Plaintiffs "have been subjected to loss, and are exposed to further loss." (*Id.*) Considering the large amounts of money at stake under the Logan CDS contracts and Plaintiffs' specific allegation that they have already suffered a loss of over $31 million, it is inconceivable that Plaintiffs' claims, if proven, would not exceed $75,000. *See NSI Int'l, Inc. v. Mustafa*, No. 09–CV–1536, 2009 WL 2601299, at *7 (E.D.N.Y. Aug. 20, 2009) (finding, after reviewing affidavits and exhibits submitted by the parties, "that the record amply supports a 'reasonable probability' that the jurisdictional amount exceeds $75,000"); *James*, 2004 WL 2624004, at *4 (noting that plaintiff's medical reports supported finding that amount in controversy requirement was satisfied).

Accordingly, the Court finds that Defendants have established by a preponderance of evidence that Plaintiffs' damages, if proven, would exceed $75,000. However,

the Court must analyze the fraudulent joinder claim in order to decide if removal was proper.

### C. Fraudulent Joinder Claim

#### 1. General Principles

 To demonstrate that a non-diverse defendant has been fraudulently joined to defeat diversity, a defendant must show, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings (a claim not made here), or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court. *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir.2004); *Whitaker*, 261 F.3d at 207; *Pampillonia*, 138 F.3d at 461.[7] "Even if non-diverse defendants are joined solely to prevent removal to federal court, fraudulent joinder is not shown if the plaintiff does in fact have a valid claim against the non-diverse defendants." *Brown ex rel. Brown v. Noxubee Gen. Hosp. (In re Zyprexa Prods. Liab. Litig.)*, No. 08–CV–3249, 2008 WL 4561628, at *3 (E.D.N.Y. Oct. 10, 2008). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Pampillonia*, 138 F.3d at 461; *see also Briarpatch*, 373 F.3d at 302 (same).

 "[T]he test of whether or not there has been fraudulent joinder is uniformly whether the plaintiff can establish a claim under state, not federal law." *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F.Supp.2d 357, 378 (S.D.N.Y.2006) (internal quotation marks omitted); *see also Rezulin Prods.*, 133 F.Supp.2d at 280 (stating that in

7. In *In re Rezulin Products Liability Litigation*, 133 F.Supp.2d 272 (S.D.N.Y.2001), Judge Kaplan suggested that the Second Circuit's standard that the defendant show "no possibility" of recovery "cannot be taken literally" because "[e]ven if a plaintiff's claim against a non-diverse defendant were squarely precluded by a recent decision of a state's highest court . . ., there always would be a 'possibility,' however remote, that the court or legislature might change its mind so as to permit the plaintiff to prevail." *Id.* at 280 n. 4. As a result, *Rezulin Products* and several subsequent decisions in this district have interpreted *Pampillonia* to mean that defendants must show that no reasonable basis for liability exists on the claims alleged. *See id.; see also Matsumura v. Benihana Nat'l Corp.*, No. 06–CV–7609, 2007 WL 1489758, at *3 (S.D.N.Y. May 21, 2007) (quoting *Rezulin Products* and using the no reasonable basis standard). It is arguable that there is any difference between the no reasonable basis test and the Second Circuit's "no possibility" standard. *See Lepore v. Blue Ridge Real Estate Co.*, No. 08–CV–2028, 2008 WL 2986662, at *2 (E.D.N.Y. July 31, 2008) ("At issue . . . is only whether there is 'no possibility' that plaintiff can state a cause of action. . . . Stated differently, the court must determine whether there is no 'reasonable basis for predicting liability on the claims alleged.' " (quoting *Rezulin Prods.*, 133 F.Supp.2d at 280 n. 4).) Regardless, and not that the outcome would differ, the Court will follow the Second Circuit's instruction that Defendants must show "no possibility" of plaintiffs succeeding under current New York state law. *See In re Fosamax Prods. Liab. Litig.*, 09–CV–4061, 2009 WL 3109832, at *2 (S.D.N.Y. Sept. 28, 2009) ("Most courts in this district have applied the 'no possibility' standard rather strictly." (footnote omitted)); *Locicero v. Sanofi–Aventis U.S. Inc.*, No. 08–CV–489S, 2009 WL 2016068, at *4 (W.D.N.Y. July 10, 2009) ("There is no reason to believe that the Second Circuit inadvertently used the language it did when it articulated the fraudulent joinder standard." (internal quotation marks omitted)); *Stan Winston Creatures*, 314 F.Supp.2d at 183 (applying "legally impossible" standard); *Nemazee v. Premier, Inc.*, 232 F.Supp.2d 172, 178 (S.D.N.Y.2002) ("Any possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only where there is 'no possibility' of recovery is such a finding warranted." (citation omitted)); *Arseneault v. Congoleum Corp.*, No. 01–CV–10657, 2002 WL 472256, at *5 n. 4 (S.D.N.Y. Mar. 26, 2002) (disagreeing with *Rezulin Products'* interpretation and favoring literal "no possibility" standard).

fraudulent joinder cases, "the [c]ourt must consider the state law upon which the claim rests"). That is, "[e]ven though federal law applies to the question of fraudulent joinder, the ultimate question is whether . . . state law might impose liability on the facts involved." 16 James Wm. Moore, et al., Moore's Federal Practice § 107.14[2][c][iv][C] (3d ed.2003). All ambiguities in state law are to be resolved in Plaintiffs' favor. *See Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992).

■ Furthermore, courts apply the state pleading rules relevant to the particular pleading at issue in deciding whether a plaintiff could have asserted a viable claim in state court based on that pleading. *See Gensler v. Sanolfi–Aventis*, No. 08–CV–2255, 2009 WL 857991, at *3 n. 3 (E.D.N.Y. Mar. 30, 2009) (noting that "state procedural rules apply in evaluating a claim of fraudulent joinder"); *Kuperstein v. Hoffman–Laroche, Inc.*, 457 F.Supp.2d 467, 471–72 (S.D.N.Y.2006) ("Because the purpose of fraudulent joinder analysis is to determine whether a *state* court might permit a plaintiff to proceed with his claims, [the court] will refer to the state pleading standards as they have been applied by state courts to similar claims." (emphasis in original) (footnote omitted)). New York has liberal pleading rules, especially for a summons with notice, which require that a plaintiff need only provide "at least basic information concerning the nature of a plaintiff's claim and the relief sought." *Parker v. Mack*, 61 N.Y.2d 114, 472 N.Y.S.2d 882, 460 N.E.2d 1316, 1317 (1984) (internal quotation marks omitted); *see also Schlackman v. Robin S. Weingast & Assocs., Inc.*, 18 A.D.3d 729, 795 N.Y.S.2d 707, 708 (2005) ("A pleading attacked for insufficiency must be accorded a liberal construction, and if it states, in some recognizable form,

any cause of action known to our law, it cannot be dismissed."); *Darrow v. Krzys*, 261 A.D.2d 778, 689 N.Y.S.2d 773, 774 (1999) ("A liberal construction of the statutory requirement of the contents of the notice accompanying a summons served without a complaint is consistent with the general policy of the CPLR." (internal quotation marks omitted)).

### 2. Consideration of Proposed Complaint

As an initial matter, the Court must decide whether it may only consider the claims asserted in Plaintiffs' Summons with Notice, or whether it may also consider the Proposed Complaint. The Summons with Notice stated that the Plaintiffs "failed to comply with" and "breached" the Logan CDS contracts by, *inter alia,* failing to: (i) properly serve and notify Plaintiffs of the credit events; (ii) provide required information and verification of the credit events; (iii) conduct proper dealer policing in accordance with the valuation procedures specified in the contracts; and (iv) deliver securities with the credit quality promised. (Chun Aff. Ex. A at 2.) Plaintiffs allege that despite the lack of explicit language, the Summons with Notice also asserted claims of promissory estoppel and fraud. (Pls.' Mem. 16; Pls.' Reply Mem. 7–8.)

In a fifty-nine page Proposed Complaint, Plaintiffs lay out breach of contract claims against all Defendants relevant to all three Logan CDS contracts, which are substantially similar to the allegations in the Summons with Notice. (Chun Aff. Ex. C ¶¶ 145–162.) Plaintiffs also detail a host of new causes of action against RBCCMC, including (i) fraud based upon affirmative misrepresentations; (ii) fraudulent omissions; (iii) aiding and abetting fraud; (iv) negligent misrepresentations; and (v) promissory estoppel.[8] (*Id.* ¶¶ 113–144, 163–166.)

---

8. Plaintiffs also assert an action to enforce

contractual rights. (Chun Aff. Ex. C ¶¶ 167–

Courts "generally evaluate a defendant's right to remove a case to federal court at the time the removal notice" was filed. *Vera v. Saks & Co.,* 335 F.3d 109, 116 n. 2 (2d Cir.2003) (per curiam); *see also In re Shell Oil Co.,* 970 F.2d 355, 356 (7th Cir.1992) ("Because jurisdiction is determined as of the instant of removal, a post-removal affidavit or stipulation is no more effective than a post-removal amendment of the complaint.") (per curiam); *In re MTBE,* 399 F.Supp.2d at 363 ("A court must thus consider the complaint at the time of removal to determine if removal was appropriate in the first place." (footnote omitted)). Thus, "[i]n considering a motion to remand where the issue of fraudulent joinder has been raised, the court examines the pleadings at the time the case was removed to determine whether a cause of action has been pleaded" against the non-diverse defendant. *Rosenberg v. Carnival Cruise Lines,* No. 83–CV–6985, 1984 WL 535, at *1 (S.D.N.Y. June 27, 1984) (internal quotation marks omitted).

However, "[i]n making [a fraudulent joinder] inquiry, courts can look beyond the pleadings to determine if the pleadings can state a cause of action." *In re Consol. Fen–Phen Cases,* No. 03–CV–3081, 2003 WL 22682440, at *3 (E.D.N.Y. Nov. 12, 2003); *see also Pampillonia,* 138 F.3d at 461–62 (considering affidavit to determine whether defendant was fraudulently joined); *Audi of Smithtown, Inc. v. Volkswagen of Am., Inc.,* No. 08–CV–1773, 2009 WL 385541, at *3 (E.D.N.Y. Feb. 11, 2009) ("In analyzing the fraudulent joinder issue, the court is permitted to look beyond the pleadings to resolve this jurisdictional question."); *Sherman v. A.J. Pegno Constr. Corp.,* 528 F.Supp.2d 320, 327 n. 10 (S.D.N.Y.2007) (stating that the court is

permitted to look beyond the pleadings to resolve jurisdictional question of fraudulent joinder); *Arseneault,* 2002 WL 472256, at *6 (considering "deposition testimony and other material outside of the pleadings" in analyzing fraudulent joinder claim). In fraudulent joinder cases, "[p]ost-removal filings may not be considered, however, when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." *Griggs v. State Farm Lloyds,* 181 F.3d 694, 700 (5th Cir.1999); *see also Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 263 (5th Cir. 1995) (stating that although the court could consider affidavits or deposition testimony in analyzing fraudulent joinder claim, the court should not use such evidence to "determine whether a claim has been stated against the nondiverse defendant under a legal theory not alleged in the state court complaint"); *Lovell v. United Airlines, Inc.,* No. 09–CV–146, 2009 WL 3172729, at *3 (D.Haw.2009) (stating that in evaluating fraudulent joinder, "the court may consider the plaintiff's factual assertions (whether in a brief, an affidavit, or in some other form), that elaborate on the allegations of the complaint, so long as those factual assertions are not inconsistent with the allegations of the complaint" (quoting *Conk v. Richards & O'Neil, LLP,* 77 F.Supp.2d 956, 961 (S.D.Ind.1999))); *In re Fen–Phen,* 2003 WL 22682440, at *5 n. 9 (considering documents outside the complaint to determine if complaint stated a cause of action, but refusing to consider new theories of liability not asserted in the complaint). In other words, documents outside the pleadings may be considered "only to the extent that the factual allegations ... clarify or amplify the claims actually alleged." *Griggs,*

171.) This new action is asserted only against RBC, and because RBC is a diverse defendant, additional claims against RBC are im-

material to whether RBCCMC should be excluded based on fraudulent joinder.

181 F.3d at 700; *see also In re Fen–Phen*, 2003 WL 22682440, at *5 n. 9; *Rosenberg*, 1984 WL 535, at *1.

Thus, the Court will consider the Proposed Complaint and the other submitted documents only to evaluate the specific contract claims alleged in the Summons with Notice, but the Court notes that the result would be the same even if it did not consider the Proposed Complaint. The Court, however, will not consider any new causes of action not alleged in the Summons with Notice, such as the promissory estoppel or fraud claims. Furthermore, although the Court will consider the Proposed Complaint in regard to contract claims summarized in the Summons with Notice, the inquiry remains whether Plaintiffs have a possibility of asserting such claims, not whether Plaintiffs are likely to succeed on these claims on the merits. *See Locicero*, 2009 WL 2016068, at *9 (stating that "[a]lthough ... district courts may look beyond the face of the complaint" to decide fraudulent joinder claims, the plaintiff "need not show that he could survive ... a motion for summary judgment") (internal quotation marks omitted); *Sherman*, 528 F.Supp.2d at 328–29 (noting that to survive a fraudulent joinder claim, plaintiff need not show it would survive a motion to dismiss).

### 3. Breach of Contract

As noted, the only cause of action included in the Summons with Notice is one for breach of contract. Under New York state law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245–46 (2d Cir.2000); *Matsumura v. Benihana Nat'l Corp.*, No. 06–CV–7609, 2007 WL 1489758, at *4 (S.D.N.Y. May 21, 2007). It is well established that, generally, a party who is not a signatory to a contract cannot be held liable for breaches of that contract. *See Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc.*, 28 A.D.3d 595, 813 N.Y.S.2d 751, 752 (2006) (holding that "breach of contract cause of action was properly dismissed ... since [the respondent] was not a party to the agreement in question"); *Bellino Schwartz Padob Adver., Inc. v. Solaris Mktg. Group, Inc.*, 222 A.D.2d 313, 635 N.Y.S.2d 587, 588 (1995) (holding that the lower court properly dismissed the breach of contract action because the defendant "was not a signatory to the agreement"); *Smith v. Fitzsimmons*, 180 A.D.2d 177, 584 N.Y.S.2d 692, 695 (1992) ("As a general rule, privity or its equivalent remains the predicate for imposing liability for nonperformance of contractual obligations."); *Stanley Agency, Inc. v. Behind the Bench, Inc.*, No. 7661/08, 23 Misc.3d 1107(A), 2009 WL 975790, at *10 (Sup.Ct. Apr. 13, 2009) (stating that "only an entity that is a party to a contract may be liable for a breach of contract").

An exception to this general rule exists when a non-signatory is found to have manifested an intent to be bound by the contract. *See Horsehead Indus., Inc. v. Metallgesellschaft AG*, 239 A.D.2d 171, 657 N.Y.S.2d 632, 633 (1997); *accord D'Antonio v. Metro. Transp. Auth.*, No. 06–CV4283, 2008 WL 582354, at *7 (S.D.N.Y. Mar. 4, 2008). In *Horsehead*, for example, the First Department held that a non-signatory parent corporation could be held liable if its "conduct manifests an intent to be bound by the contract, which intent is inferable from the parent's participation in the negotiation of the contract, or if the subsidiary is a dummy for the parent, or if the subsidiary is controlled by the parent for the parent's own purposes." 657 N.Y.S.2d at 633. In certain cases, this exception rests on the "alter ego" doctrine so that a parent corporation's intent to be bound is used to prove that the subsidiary

is the parent's alter ego. *See, e.g., Warnaco Inc. v. VF Corp.*, 844 F.Supp. 940, 946 (S.D.N.Y.1994) (noting that a non-signatory parent corporation can be bound if it participates in the negotiations but has a subsidiary, which is a proxy of the parent, sign the contract); *Horsehead*, 657 N.Y.S.2d at 633 (using the "intent to be bound" language as the test for deciding whether parent company was alter ego of subsidiary); *cf. Capricorn Investors III, L.P. v. Coolbrands Int'l, Inc.*, No. 603795/06, 24 Misc.3d 1224(A), 2009 WL 2208339, at *7–8 (Sup.Ct. July 14, 2009) (finding that parent was not an alter ego of the subsidiary because it had not manifested an intent to be bound).

As Defendants note, the type of exception recognized in *Horsehead* often involves a corporation alleged to be the alter ego of another corporation. *See Sheridan Broad. Corp. v. Small*, 19 A.D.3d 331, 798 N.Y.S.2d 45, 45 (2005) (stating that "[p]arent and subsidiary or *affiliated* corporations" are generally "not [to] be held liable for the contractual obligations of the other absent a demonstration that there was an exercise of complete dominion and control" (emphasis added)); *Rivera v. Citgo Petroleum Corp.*, 181 A.D.2d 818, 583 N.Y.S.2d 159, 159 (1992) (noting, without mentioning a parent-subsidiary relationship, that the court could pierce the corporate veil and "hold two corporations to constitute a single legal unit, where one is so related to, or organized, or controlled by, the other as to be its instrumentality or alter ego" (internal quotation marks omitted)); *accord In re Typhoon Indus., Inc.*, 6 B.R. 886, 890 (Bankr.E.D.N.Y.1980) (finding that, "notwithstanding the absence of a parent-subsidiary relationship," affiliate companies of a bankrupt corporation were "mere instrumentalities or alter egos of the bankrupt"). However, New York courts recognize that a non-signatory can be liable for a contract by manifesting an intent to be bound without being an "alter ego" of a signatory to

the contract. *See RUS, Inc. v. Bay Indus., Inc.*, No. 01–CV–6133, 2004 WL 1240578, at *20–21 (S.D.N.Y. May 25, 2004) (applying New York law and finding that nonsignatory was liable for breach of contract when its conduct "manifested an unequivocal intent to be bound" by the contract). In *RUS*, the plaintiff sought to hold a parent corporation liable for a breach of its subsidiary's contract. *Id.* at *1. The court held that the non-signatory was liable under "two distinct theories"— manifestation of an intent to be bound and the alter ego doctrine. *Id.* at *20–22. The court explained that "[e]ven if a party does not sign the relevant written agreement, it will be bound if the totality of its expressed words and deeds manifests an intent to be bound." *Id.* at *20. The defendant in *RUS* was found to have manifested an intent to be bound when it communicated with the plaintiff about the sale and marketed the sale, and when the parent's negotiator testified that he intended the parent to be bound by the contract. *Id.* at *21; *cf. D'Antonio*, 2008 WL 582354, at *7 (holding, without mentioning any "alter ego" principles, that non-signatory was not liable on breach of its subsidiary's contract when the plaintiffs did not sufficiently allege that the parent manifested an intent to be bound).

 Furthermore, under a similar theory, nonsignatories may be held liable for breach of contract, without being "alter egos," if their actions show that they are in privity of contract or that they assumed obligations under the contract. *See Impulse Mktg. Group v. Nat'l Small Bus. Alliance, Inc.*, No. 05–CV–7776, 2007 WL 1701813, at *5–6 (S.D.N.Y. June 12, 2007) (applying New York law); *ESI, Inc. v. Coastal Corp.*, 61 F.Supp.2d 35, 73–74 (S.D.N.Y.1999) (applying New York law). In *ESI*, the plaintiff sought to hold a non-signatory, which was alleged to be in a joint venture with the signatories, liable to a written contract between the plaintiff

and the signatories. *ESI*, 61 F.Supp.2d at 73. The court stated that under New York law, a "non-signatory to a contract can be named as a defendant in a breach of contract action only if the party is in privity with the plaintiff or has assumed the obligations of the contract." *Id.* Focusing on the allegations that the nonsignatory had "attended meetings ... and participated in the negotiations and drafting" of the contract, the court found that the plaintiff had stated a claim under New York law for breach of contract. *Id.* at 73–74. The court also noted that other documents besides the operative contract could show that the nonsignatory accepted and assumed the obligations of the contract. *Id.* at 74. In a similar case, the court in *Impulse Marketing* found that a nonsignatory, which provided marketing services to the signatory defendant, could be held liable for a breach of contract. *See* 2007 WL 1701813, at *6. The court found that the plaintiff adequately alleged a breach of contract claim by stating that the nonsignatory "assumed the contract" by, *inter alia*, "acknowledg[ing] that it was the actual party in interest"; "'micro-man-

ag[ing] performance' under the contract"; and making payments on behalf of the signatory. *Id.* In neither of these cases was the nonsignatory the parent corporation of a subsidiary that signed the contract.

 Indeed, it is a basic tenant of contract law that the existence of a contract depends on whether the parties intended to be bound, considering the "objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 393 N.Y.S.2d 350, 361 N.E.2d 999, 1001 (1977) (finding that owner and subcontractor had contract despite the fact that the subcontractor's written agreement was with the general contractor). "Factors to be considered in determining whether a valid agreement exists include the parties' writings, their prior negotiations, their respective situations, and the goals they were attempting to achieve." *Barry, Bette & Led Duke, Inc. v. State*, 169 Misc.2d 594, 645 N.Y.S.2d 713, 719 (Ct.Cl.1996) (internal citation omitted).[9]

9. It bears noting that the Second Circuit has held that a "nonsignatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency." *Thomson–CSF, S.A. v. Am. Arbitration Assoc.*, 64 F.3d 773, 776 (2d Cir.1995) (internal quotation marks and citation omitted). The court has recognized five theories, "aris[ing] out of common law principles of contract and agency law ... for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Id.; see also Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir.2003). Under the alter ego theory, courts have found, or have left open the possibility of finding, a nonsignatory bound to the arbitration agreement when it was not the parent of the signatory corporation. *See Coastal States Trading, Inc. v. Zenith Navigation, S.A.*, 446 F.Supp. 330, 336–37 (S.D.N.Y.1977) (stating that a parent corporation may be liable for its

subsidiaries contracts "[o]r conversely, a subsidiary may, under some circumstances, be held bound to obligations undertaken by its parent," such as when the subsidiary is an agent or instrumentality of the parent).

Notably, in the context of holding nonsignatories to arbitration agreements, the assumption theory, which arises out of "ordinary principles of contract," is distinct from the veilpiercing/alter ego theory. *See Thomson–CSF*, 64 F.3d at 776. As with the alter-ego doctrine, courts applying the assumption theory have held nonsignatories that were not the parent corporation of the signatory to be bound by the arbitration agreement. *See Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105–07 (2d Cir.1991) (finding that nonsignatory employees who were not members of the union signatory were bound by arbitration agreement because their conduct manifested a clear intent to arbitrate); *In re Petition of Transrol Navegacao, S.A.*, 782

Applying these principles of New York contract law, the Court finds that Defendants have failed in meeting their heavy burden of showing clearly and convincingly that there is no possibility that Plaintiffs can prevail in their contract claim against RBCCMC. First, while it may be that in their Summons with Notice, Plaintiffs did not specifically allege an alter ego, or any other, specific theory for deeming RBCCMC to be bound by the contract, they were under no obligation to do so. *See Connolly v. Napoli, Kaiser & Bern, LLP,* 12 Misc.3d 530, 817 N.Y.S.2d 872, 879 (Sup.Ct.2006) (rejecting argument that summons with notice failed to give notice of the action because "[w]hile the words '[t]he object of this action is breach of contract' 'may not apprise the defendants of the precise legal theory behind plaintiff's case, they adequately apprise defendants of the nature of the action at this stage of the litigation'" (second alteration in original) (quoting *Pilla v. La Flor De Mayo Express,* 191 A.D.2d 224, 595 N.Y.S.2d 678, 678 (1993))). While the law may be unfriendly to such alter ego claims, *see e.g., TNS Holdings, Inc. v. MKI Sec. Corp.,* 92 N.Y.2d 335, 680 N.Y.S.2d 891, 703 N.E.2d 749, 751 (1998) (stating that parties wishing to assert the alter ego doctrine bear a "heavy burden"), such claims are clearly viable in New York, *see, e.g., Horsehead,* 657 N.Y.S.2d at 633. Thus, while Plaintiffs' two-page Summons with Notice may not have included specific factual allegations that would support an alter ego theory of breach of contract, Defendants have not established, as a legal or factual matter, the impossibility of Plaintiffs making out such a claim. This alone defeats Defendants' removal. *See Locicero,* 2009 WL 2016068, at *5, *8 (rejecting fraudulent joinder claim and noting

that plaintiff had possibility of substantiating her claims, or of amending her bill of particulars to add new claims, after discovery); *Lepore,* 2008 WL 2986662, at *3 (finding that defendants had failed to show fraudulent joinder when non-diverse defendant could be liable for negligence if plaintiff's allegations were "borne out by discovery"). And, in any event, New York law does not require Plaintiffs to allege alter ego in order to bind non-signatories to a contract. *See Impulse Marketing,* 2007 WL 1701813, at *5–6; *RUS,* 2004 WL 1240578, at *20.

Second, Plaintiffs' claim is plausible under the theories that RBCCMC manifested an intent to be bound by or an intent to assume obligations under the contract, let alone that it was in privity. However tenuously Defendants think these allegations support a breach of contract claim against a non-signatory, the Court cannot say that it is legally or factually impossible that Plaintiffs can succeed on the merits of a contract claim under these theories. *See In re Fosamax,* 2009 WL 3109832, at *2 (stating that in a fraudulent joinder inquiry, "[t]he court lends more lenient scrutiny to plaintiff's claims than it would if it were ruling on a motion to dismiss"); *Sherman,* 528 F.Supp.2d at 328–29 (noting that "[t]he strength of plaintiffs' case ... is not relevant" to a fraudulent joinder inquiry and that "it is not even enough for [the defendants asserting fraudulent joinder] to show that [p]laintiffs' cause of action ... would not survive a motion to dismiss" (internal quotation marks and citations omitted) (first and second alteration in original)). For example, even if, as Defendants suggested at oral argument, there are no cases applying *Horsehead* to a subsidiary, there are no cases categorically rejecting

F.Supp. 848, 851 (S.D.N.Y.1991) (finding nonsignatory guarantor of charter agreement bound by arbitration agreement when the

guarantor's intention to arbitrate was "implied from [the] conduct of [the] non-signator").

that possibility. *See Yoder v. Novo Mediagroup, Inc.*, 2001 WL 62861, at *4 (S.D.N.Y. Jan. 24, 2001) (rejecting fraudulent joinder claim when, even though it was "not clear whether the single employer doctrine applie[d] to common law claims of employees, the possibility remain[ed] that the doctrine [would] be available" to the plaintiff in state court). Thus, Defendants have failed to show that no possibility exists that a New York court would find RBCCMC liable for breach of contract because it manifested an intent to be bound.[10]

### D. Attorneys' Fees

 "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Assessment of costs and fees against the removing defendants is within the court's discretion and does not require a finding of bad faith or frivolity." *Kupersteien*, 457 F.Supp.2d at 472 (footnote omitted); *see also Morgan Guar. Trust Co. of New York v. Republic of Palau*, 971 F.2d 917, 923–24 (2d Cir.1992) (stating that § 1447(c) "affords a great deal of discretion and flexibility to the district courts in fashioning awards of costs and fees"). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005); *see also Kuperstein*, 457 F.Supp.2d at 472 (stating that courts have awarded costs when "defendants ... failed to establish a reasonable basis for removal," but that the "mere

fact that the defendant fail[ed] to carry his burden" does not justify an award) (internal quotation marks and footnote omitted).

 The Court, in its discretion, denies costs and attorneys' fees. Although Defendants did not prevail in opposing the motion to remand, the fraudulent joinder claim on which the removal was based was objectively reasonable considering the circumstances and the nature of the case. *See Intershoe*, 97 F.Supp.2d at 476 (declining to award costs and attorneys' fees "[i]n light of the subtleties involved in applying fraudulent joinder principles to non-diverse plaintiffs ..., as well as the absence of any clear showing that plaintiffs have been prejudiced by the delays associated with removal"). In a complicated case involving multiple parties and sophisticated credit default swap contracts, Plaintiffs submitted a two-page Summons with Notice that contained little factual detail. The only explicit legal claim in the bare-bones Summons with Notice was one of breach of contract, even though RBCCMC was not a signatory. Under these circumstances, Defendants were not objectively unreasonable in challenging the viability of Plaintiffs' theory to hold RBCCMC liable as a non-signatory to the contracts at issue. *See Moran*, 2001 WL 1717214, at *3–4 (finding that the "defendants could reasonably have believed that removal was justified" considering that the plaintiffs' summons with notice did not clearly frame a complaint against the non-diverse defendant). Moreover, Defendants were not unreasonable for filing for removal before receiving a complaint because Defendants faced the risk of an untimely removal if the Summons with Notice was deemed an initial pleading. *See Whitaker*, 261 F.3d

---

**10.** Because the Court finds that remand is appropriate based on Plaintiffs properly naming a non-diverse Defendant in the breach of contract claim, the Court need not, and therefore will not, consider Plaintiffs' promissory estoppel and fraud claims alleged in the Proposed Complaint.

at 205–06; *Moran,* 2001 WL 1717214, at *4. Although Defendants could have demanded a copy of the complaint before filing the Notice of Removal, they were not required to do so. See N.Y. C.P.L.R. § 3012(b). Plaintiffs were equally able to file a complaint (and include the fraud and promissory estoppel claims) with the Summons instead of a Notice, but chose, for their own strategic reasons, not to do so.

Accordingly, the Court finds that there was an objective basis for Defendants to seek removal when they did, as reflected in the well-presented opposition to the Motion to Remand. Therefore, the Motion for Attorneys' Fees is denied.

### III. Conclusion

For the reasons discussed above, Plaintiffs' Motion is granted in part and denied in part. The Clerk of Court is respectfully directed to terminate the pending motion (Dkt. No. 14), and to effect immediate remand to the New York State Supreme Court, Westchester County.

SO ORDERED.